NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————
                                                                    :
BEVERLY HILLS MOTORING, INC. and                                    :
MILESTONE MOTORCARS LLC,                                            :
                                                                    :  Civil Case No. 14-756 (FSH)
            Plaintiffs,                                             :
                                                                    :  **OPINION & ORDER**
       v.                                                           :
                                                                    :  Date: January 20, 2015
TODD MORICI and                                                     :
MORICI MOTOR SPORTS LLC,                                            :
                                                                    :
            Defendants.                                             :
                                                                    :
—————————————————————                                               :

**HOCHBERG, District Judge:**

This matter comes before the Court upon Third-Party Defendant Collectible Exotic Motor Cars, LLC's ("Collectible") and Third-Party Defendant Thomas E. Johnson's ("Johnson") motions to dismiss Todd Morici ("Morici") and Morici Motor Sports, LLC's ("MMS") third-party complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has reviewed the submissions of the parties and considers the motion pursuant to Federal Rule of Civil Procedure 78.

### I.      BACKGROUND

Morici and MMS's third-party complaint alleges the following facts. In February 2013, Johnson told Morici about a 1967 275GTB Ferrari ("the Ferrari") for sale in New Jersey by a person named Robert Zweiben ("Zweiben"). After inspecting the Ferrari, Morici purchased it from Zweiben and paid Johnson a $10,000 commission.

Johnson subsequently told Morici that he had a potential buyer for the Ferrari named Roy Broad ("Broad"). Morici quoted a price and told Johnson that if the Ferrari was sold to Broad within one week at that price, then MMS would pay Johnson a commission of $25,000. Morici told Johnson that his ownership of the Ferrari was confidential and that he did not want it "shopped" to any potential buyer other than Broad. Johnson agreed to Morici's terms. Neither Morici nor MMS agreed to pay Johnson a commission on any other future sale of the Ferrari. Broad did not purchase the Ferrari.

Around April 2013, Collectible, acting through an agent named Andrew Cohen ("Cohen"),[1] approached Morici to discuss purchasing the Ferrari. Cohen asked for a commission of $100,000 if the Ferrari could be sold for $1.6 million. Morici agreed, on the condition that Cohen would not also receive a commission from Collectible.

On May 8, 2013, Cohen traveled to New Jersey to inspect the Ferrari. At that time, Cohen asked Morici for a signed statement that Cohen would be paid a $100,000 commission on consummation of the sale to Collectible. Morici wrote an email stating such to Cohen, then printed and signed the email (the "Commission Agreement"), which Morici handed to Cohen. When Cohen admitted to Morici that Collectible would also be paying Cohen a commission on the proposed sale, Morici threatened to cease discussions unless Cohen agreed that MMS would not owe Cohen a commission and returned the Commission Agreement. Cohen agreed, and Morici crumpled up the Commission Agreement and threw it into a trashcan. Later, when Morici was out of the room, Cohen retrieved the Commission Agreement from the trashcan without Morici's knowledge. Later that day, Cohen signed a contract on behalf of Collectible purchasing the Ferrari (the "Sales Agreement").

---

[1] Cohen is a Plaintiff in this matter.

On March 8, 2014, Johnson told Brandon Lawrence of Sportscar Italiano that Morici was "a bad guy," had "screwed him out of a commission," and that Morici's "word was not good."

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." (citations omitted)).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (citations omitted).

Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b)

requires plaintiffs to "plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp*., 742 F.2d 786, 791 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985). To satisfy the pleading requirement, plaintiffs may plead the specific conduct alleged to be fraudulent along with the "date, place or time" that the alleged fraud occurred or use some "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id*. Vague or conclusory allegations of fraud will not survive a motion to dismiss. *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1418 (3d Cir. 1997).

### III.   DISCUSSION

Collectible has moved to dismiss Morici and MMS's claims for fraud (First Count), breach of contract (Third Count), breach of implied covenant of good faith and fair dealing (Second Count), and for attorneys' fees (Fourth Count). Johnson has moved to dismiss Morici and MMS's claims for tortious interference with prospective economic relations (Fifth Count) and defamation (Sixth Count).

#### a.  First Count: Fraud

Third-Party Plaintiffs assert a fraud claim against Collectible over the execution of the Sales and Commission Agreements. "To state a claim for fraud under New Jersey law, a plaintiff must allege (1) a material misrepresentation of fact; (2) knowledge or belief of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367–68 (1997)). Although "conditions of mind

. . . may be averred generally," Federal Rule of Civil Procedure 9(b) applies a stringent pleading standard to fraud claims such that "the circumstances constituting fraud or mistake shall be stated with particularity." To meet this standard, a plaintiff "must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200.

Although Third-Party Plaintiffs allege that Cohen acted deceitfully—in misrepresenting that Collectible would be paying Cohen a commission and in retrieving the Commission Agreement from the trashcan—Third-Party Plaintiffs' claim for fraud fails because the complaint fails to allege any damage or harm resulting from a reliance on Cohen's alleged misrepresentations. The complaint states only that Third-Party Plaintiffs "suffered economic and other injury." (Dkt. No. 24 ¶ 21.) The complaint does not allege particular facts in support of this conclusion—it does not allege, for example, that Third-Party Plaintiffs were induced to pay a doubled commission as a result of Cohen's deceit, nor does it allege that Third-Party Plaintiffs were, in any way, disadvantaged by the Sales Agreement. Third-Party Plaintiffs' bare and conclusory recitation of the legal element of harm fails to satisfy the pleading requirements of *Twombly*/*Iqbal*, let alone Federal Rule of Civil Procedure 9(b). *See, e.g.*, *White v. Brommer*, 747 F. sup. 2d 447, 466 (E.D. Penn. 2010) (dismissing tort claim because "conclusory recitation" of element of harm, without pled facts, failed to meet *Twombly* standard); *Yost v. General Motors Corp.*, 651 F. Supp. 656, 658 (D.N.J. 1998) (dismissing fraud claim because "plaintiff fails to plead facts to show that he relied to his detriment on any such representations").

### b.  Third Count: Breach of Contract

Third-Party Plaintiffs assert that Cohen's actions constitute a breach of the Sales Agreement between Collectible and Third-Party Plaintiffs. The elements of a breach of contract

claim under New Jersey law are that: (1) a valid contract exists; (2) the defendant materially breached the contract; and (3) the plaintiff suffered damages as a result of the breach. *Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 421 F. Supp. 2d 831, 833 (D.N.J. 2006) (citing *Coyle v. Englander's*, 488 A.2d 1083, 1088–89 (N.J. Super. Ct. App. Div. 1985)).

Third-Party Plaintiffs' complaint fails to allege any damage suffered as a result of the alleged breach beyond a conclusory recitation that Third-Party Plaintiffs have "suffered economic and other injury." (Dkt. No. 24 ¶ 28.) As above, this bare statement does not meet the federal pleading requirements.

### c.  Second Count: Breach of Implied Covenant of Good Faith

Third-Party Plaintiffs also assert a claim against Collectible for breach of the implied covenant of good faith and fair dealing. "[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." *Kalogeras v. 239 Broad Ave., LLC*, 997 A.2d 943, 953 (N.J. 2010) (quoting *Sons of Thunder v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997)).[2] New Jersey generally recognizes a breach of the implied covenant of good faith and fair dealing claim in three circumstances: (1) to rectify a party's unfair exercise of discretion; (2) to redress a party's bad-faith performance; and (3) to include additional terms not expressly part of the contract but consistent with the parties' expectations. *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1076 (N.J. Super. Ct. App. Div. 2002).

Third-Party Plaintiffs' complaint fails to state sufficient facts to situate their claim within one of these broad buckets. Indeed, the complaint only suggests one expectation of performance

---

[2] The complaint asserts the implied covenant claim "in connection with the sale of the subject car." (Dkt. No. 24 ¶¶ 24–25.) Such phrasing does not clearly indicate whether the Third-Party Plaintiffs intend to assert that implied covenant allegedly breached was that of the Sales Agreement or the Commission Agreement. Because this Court's reasoning above applies in either instance—and applies even if the Court were to read the implied covenant claim as a standalone claim as some New Jersey courts have done—the Court need not attempt to discern Third-Party Plaintiffs' intent from this inartful wording.

for Collectible under the Sales Agreement: Collectible was to pay Third-Party Plaintiffs $1.6 million (Third-Party Plaintiffs' own asking price) in exchange for the Ferrari. As far as an implied additional term, the only such term to which the complaint hints is that the parties expected that Cohen would only receive one commission—from either Collectible or Third-Party Plaintiffs.[3] This term may be read into the allegations that Morici repeatedly refused to negotiate the sale or commission with Cohen unless Cohen agreed that Cohen would not receive a commission from Third-Party Plaintiffs if he would also receive a commission from Collectible. (Dkt. No. 21 ¶¶ 13, 16.) Nonetheless, the complaint only alleges that Cohen *attempted* to procure a second commission on the sale; the complaint clearly indicates that Third-Party Plaintiffs never paid Cohen a commission and alleges instead that Morici did not realize that Cohen intended to collect on the trashed Commission Agreement until Cohen initiated this lawsuit. (Dkt. No. 21 ¶ 17.) In other words, even were Third-Party Plaintiffs to establish through discovery that such an implied term was intended by the parties, the complaint itself alleges that the term was not breached.

Stated another way, the implied covenant of good faith and fair dealing presumes that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Kalogeras*, 997 A.2d at 953 (quoting *Palisades Properties, Inc. v. Brunetti*, 207 A.2d 522, 531 (1965)). The complaint puts forward no

---

[3] Such a reading of the complaint requires accepting Third-Party Plaintiffs' contentions that Cohen's alleged deceits in procuring the Commission Agreement impute to Collectible under the law of agency. Because Third-Party Plaintiffs' implied covenant claim fails for the separate reasons stated above, the Court need not consider this highly fact-specific inquiry at this an early stage in the litigation.

allegations that would allow a plausible inference that Third-Party Plaintiffs were denied "the fruits of the contract"—namely, a $1.6 million payment in exchange for the Ferrari.[4]

### d.  Fourth Count: Attorneys' Fees

Because the Court finds that Third-Party Plaintiffs have failed to state a claim against Collectible, the Court denies their request for attorneys' fees from Collectible.

### e.  Fifth Count: Tortious Interference with Prospective Economic Relations

Third-Party Plaintiffs assert that Johnson's statements to Lawrence constitute tortious interference with prospective economic relations. Under New Jersey law, a claim for tortious interference with prospective economic relations requires that the plaintiff establish: (1) a reasonable expectation of economic advantage; (2) that economic advantage was lost as a direct result of defendant's malicious interference; and (3) plaintiff suffered damages. *Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1170 (N.J. 2001).

Third-Party Plaintiffs' complaint fails to allege a reasonable expectation of economic advantage. The complaint alleges that Johnson's statements to Lawrence will "interfere with and harm Morici's business relation with Brandon Lawrence and his company, Sportscar Italiano," but the complaint proffers no more specific allegation of expected economic advantage. The complaint does not, for example, allege that Morici was in business negotiations with Lawrence or Sportscar Italiano or even that Morici had discussed a *possible* deal with Lawrence or Sportscar Italiano. Instead, Third-Party Plaintiffs contend that a reasonable expectation of economic advantage exists because it may be presumed that two parties within a relatively niche market—here, the dealing of classic cars—may be presumed to engage in business relations at some undefined future time. Such a presumption is far too attenuated to be a "reasonable"

---

[4] Indeed, Collectible asserts in its motion papers that, in accordance with the Sales Agreement, Collectible paid Third-Party Plaintiffs their asking price of $1.6 million.

expectation of economic advantage. Third-Party Plaintiffs provide the Court no cases in which courts have sustained a similar claim on analogously attenuated presumptions, and indeed, as Johnson argues in his motion briefing, the cases that Third-Party Plaintiffs did cite concern specific, contemplated business deals. *See Harris v. Perl*, 197 A.2d 359, 464 (N.J. 1964); *Louis Kamm, Inc., v. Flink*, 175 A. 62, 69–70 (N.J. 1934); *Leslie Blau Co. v. Alfieri*, 384 A2d 859, 864–65 (N.J. Super. Ct. App. Div. 1978); *Myers v. Arcadio, Inc.*, 180 A2d 329, 331 (N.J. Super. Ct. App. Div. 1962); *Sustick v. Slatina*, 137 A.2d 54, 57–58 (N.J. Super. Ct. App. Div. 1957); *McCue v. Deppert*, 91 A.2d 503, 504–505 (N.J. Super. Ct. App. Div. 1952).

### f.   Sixth Count: Defamation

Third-Party Plaintiffs also assert a claim against Johnson for defamation. Third-Party Plaintiffs' complaint, however, only alleges defamatory statements made by Johnson about Morici. (Dkt. No. 21 ¶ 19.) Because the complaint fails to allege that Johnson made defamatory statements about MMS, MMS has failed to state a claim for defamation. The remaining paragraphs of this subsection deal only with Morici's claim for defamation.

A New Jersey claim for defamation consists of the following elements: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1113 (N.J. 2009) (citations omitted). "A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, one that harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting to associate or deal with him." *G.D. v. Kenny*, 15 A.3d 300, 310 (N.J. 2011) (citations omitted).

Whether a statement is defamatory, however, depends on "its content, verifiability, and context." *Lynch v. N.J. Educ. Assoc.*, 735 A.2d 1129, 1136 (N.J. 1999). The statement must be one of fact able to be proven true or false. *Id.* at 1137. Statements of pure opinion do not satisfy this requirement because such statements only "reflect a state of mind" and, therefore, generally "cannot be proved true or false." *Id.* For example, stating a person "was dishonest and lacking in integrity" is an opinion that is generally not subject to verification. *Gulrajaney v. Petricha*, 885 A.2d 496, 503–504 (N.J. Super. Ct. App. Div. 2005). Similarly, here, Johnson's statements that Morici "was a bad guy" and that Morici's "word was not good" are statements of opinion that are not actionable under New Jersey defamation law.

Allegedly defamatory statements of "mixed opinion," on the other hand, may be actionable. A "mixed opinion" is one that is "apparently based on facts about the plaintiff or his conduct that have neither been stated by the defendant nor assumed to exist by the parties to the communication." *Kotlikoff v. The Comty. News*, 444 A.2d 1086, 1089 (1982). Such a mixed opinion statement that implies "reasonably specific assertions" of "underlying objective facts that are false" may be actionable. *Ward v. Zelikovsky*, 643 A.2d 972, 979 (N.J. 1994). For example, a defendant's alleged statement that the plaintiff "cooked the books" was found actionable because underlying the statement were facts—"specifically alleged and with sufficient evidence" and "capable of being proven objectively false"—that the plaintiff engaged in financial improprieties. *See Mangan v. Corp. Synergies Grp.*, 834 F. Supp. 2d 199, 204–205 (D.N.J. 2011). Johnson's alleged statement that Morici "screwed him out of a commission" may be a similar and actionable statement of mixed opinion. The complaint alleges that Morici did not pay Johnson a commission on an earlier proposed sale because the sale was not consummated within one week, as Morici and Johnson agreed.

Johnson contends that Morici fails to state a claim for defamation because the complaint does not adequately allege fault, the third element of defamation laid out above. The Supreme Court requires some showing of fault for a defamation claim. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974); *see also Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 272 (3d Cir. 1980) ("[The] First Amendment forbids states to impose liability [for defamation] without fault."). When the plaintiff is a private person, he or she need show only that the defendant was negligent. *McLaughlin v. Rosanio, Bailets & Talamo, Inc.*, 751 A.2d 1066, 1072 (N.J. Super. Ct. App. Div. 2000); *see also Feggans v. Billington*, 677 A.2d 771, 775 (N.J. Super. Ct. App. Div. 1996) (requiring a showing that defendant negligently failed "to ascertain the truth or falsity of the statement before communicating it"). Johnson contends that Morici's complaint fails to plead fault because Johnson was not, in fact, paid a commission by Morici and it was Johnson's own opinion that this was a result of Morici "screw[ing]" Johnson. As described above, however, the complaint alleges that Morici did not pay Johnson a commission on the sale of the Ferrari because the conditions of that sale to which Johnson agreed—that it be consummated within one week to Broad—were not met, an allegation which, if proven true, may be sufficient to establish Morici's defamation claim.[5]

---

[5] Johnson also argues that Morici's defamation claim should be dismissed because Johnson has a qualified privilege. An otherwise defamatory statement may be found to be privileged based on "(1) the appropriateness of the occasion on which the defamatory information is published, (2) the legitimacy of the interest thereby sought to be protected or promoted, and (3) the pertinence of the receipt of that information by the recipient." *Bainhauer v. Manoukian*, 520 A.2d 1154, 1169–70 (N.J. Super. Ct. App. Div. 1987). The complaint does not allege facts specific to the "appropriateness of the occasion" and, as to the second and third elements, alleges only that the recipient of the allegedly defamatory statements, Brandon Lawrence, was also in the classic car market. Although it may be likely that Johnson is protected by a qualified privilege, the few facts alleged in the complaint are not enough to find Johnson's asserted defense apparent on the face of the complaint and dismiss Morici's claim.

## IV.    CONCLUSION & ORDER

For the reasons stated above,

**IT IS** on this 20th day of January, 2015,

**ORDERED** that Collectible Exotic Motor Car, LLC's motion to dismiss (Dkt. No. 31) is **GRANTED**; and it is further

**ORDERED** that Thomas E. Johnson's motion to dismiss (Dkt. No. 32) is **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED** that the First, Second, Third, Fourth, and Fifth Counts of Todd Morici's and Morici Motor Sports, LLC's third-party complaints against Collectible Exotic Motor Car, LLC and Thomas E. Johnson are **DISMISSED**; and it is further

**ORDERED** that Morici Motor Sports, LLC's Sixth Count against Thomas E. Johnson is **DISMISSED**, but that Todd Morici's Sixth Count against Thomas E. Johnson remains.

**IT IS SO ORDERED.**

 **/s/ Hon. Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.